# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIV. NO: |
| v. | ) ) ) | |
| PRESBYTERIAN HEALTHCARE SERVICES, d/b/a Lincoln County Medical Center, | ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

## **COMPLAINT**

## **NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 against the Defendant Presbyterian Healthcare Services ("PHS"), d/b/a Lincoln County Medical Center, to correct alleged unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Tabitha Knoll-Billingsley ("Knoll-Billingsley"). As alleged with greater particularity below, the Commission alleges that PHS discriminated against Knoll-Billingsley because of her race, African-American, and retaliated against her for engaging in protected activity. Specifically, Knoll-Billingsley reported being racially harassed by her coworker to PHS management and PHS human resources office at the Lincoln County Medical Center in Ruidoso, New Mexico. After Knoll-Billingsley made her internal complaints, PHS discriminated against her because of her race, African-American, by subjecting her to terms, conditions, and privileges of employment that were different than those

afforded white or non-African-American employees. Subsequently, Knoll-Billingsley also filed an EEOC Charge of Discrimination. After Knoll-Billingsley filed internal complaints and her EEOC Charge, she was subjected to retaliation for her opposition to alleged unlawful employment practices and participation in proceedings under Title VII. PHS' retaliation against Knoll-Billingsley included but is not limited to, placing Knoll-Billingsley on administrative leave; threatening to terminate Knoll-Billingsley while she was on administrative leave; and when she sought to return from leave, telling Knoll-Billingsley she should apply for another position, transfer to a different position, or resign. Finally, once PHS agreed to return Knoll-Billingsley to her pre-administrative leave position, PHS constructively discharged her by subjecting her to further retaliation, making clear to Knoll-Billingsley that she would continue to be subject to retaliation upon her return from leave.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-5 (f)(1) and(3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ( "Commission"), is the agency of the United States of America charged with the administration, interpretation and

enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Presbyterian Healthcare Services ("PHS") has continuously been doing business as a Domestic Non-Profit Corporation in the State of New Mexico.

5. At all relevant times, PHS has continuously employed 15 or more employees.

6. At all relevant times, PHS has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

7. At all relevant times, PHS operated Lincoln County Medical Center in Ruidoso, New Mexico pursuant to an agreement with Lincoln County. Further, PHS employs the Lincoln County Emergency Medical Services employees.

8. At all relevant times, PHS was the employer of Tabitha Knoll-Billingsley ("Knoll-Billingsley") and controlled the terms and conditions of her employment while she was stationed at Lincoln County Medical Center ("LCMC") in Ruidoso, New Mexico.

## ADMINISTRATIVE PROCEDURES

9. More than thirty days prior to the institution of this lawsuit, Tabitha Knoll-Billingsley filed two charges of discrimination with the Commission alleging violations of Title VII by PHS.

10. On March 9, 2020, the Commission issued PHS a letter of determination for Knoll-Billingsley's charges of discrimination.

11. In the letter of determination, the Commission found reasonable cause to believe that PHS had violated Title VII.

12. In the letter of determination sent to PHS, the Commission invited PHS to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. In the letter of determination sent to PHS, the Commission identified the basis for each violation of Title VII it had found during its investigation of Knoll-Billingsley's two charges.

14. On March 16, 2020, PHS notified the Commission that it declined to participate in the conciliation process.

15. On March 18, 2020, the Commission issued a Notice of Failure of Conciliation to PHS. In the Notice, the Commission advised PHS that the Commission was unable to secure from them a conciliation agreement acceptable to the Commission.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF FACTS COMMON TO ALL CLAIMS**

17. PHS hired Tabitha Knoll-Billingsley on August 22, 2017 as an EMT-Basic on an on-call basis at Lincoln County Medical Center. In March 2018, PHS promoted Knoll-Billingsley to a full-time EMT-Basic position. At that time, EMS Supervisor, Sandy Nunnally, paired her with an EMT-Paramedic, a white man named Ryan Whitley.

18. Since at least March 2018, Knoll-Billingsley was subjected to unwelcome harassment because of her race, African-American, by her white coworker, Ryan Whitley while both were working for PHS in the EMS department. For example, Whitley subjected Knoll-Billingsley to numerous unwelcome racial comments during the time they were assigned to work

as EMT partners, including but not limited to, "don't get offended, but I bet you niggers are going to get out and vote now." Knoll-Billingsley was offended by this and several other racial remarks made to her by Whitley.

19. In September 2018, the PHS Hospital Administrator for LCMC, Todd Oberhue, learned of rumors among LCMC employees that Whitley had referred to Knoll-Billingsley using the term "nigger". In early October 2018, Knoll-Billingsley was called to a meeting with PHS Human Resources Manager Julie Allen. During that meeting, Knoll-Billingsley was asked about the rumors about Whitley calling her "nigger". Knoll-Billingsley told HR Manager Julie Allen about the incident where Whitley used the term "nigger" to her.

20. On October 25, 2018, Knoll-Billingsley met with Human Resources Manager Allen and filed a race discrimination and retaliation complaint.

21. Knoll-Billingsley later submitted her written complaint about the race harassment and retaliation she had experienced while working for PHS to Human Resources Manager Allen the first week of November 2018.

22. Knoll-Billingsley later reported to a meeting with Human Resources Manager Allen and Administrator Oberhue on November 15, 2018 and was placed on paid administrative leave, pending the completion of its investigation into her race and retaliation complaint.

23. During the investigation by PHS, Whitley admitted using "nigger" in a conversation with Knoll-Billingsley her, as well as a joke about Black Friday.

24. Even thought he investigation was concluded on or about November 29, 2018, PHS kept Knoll-Billingsley on administrative leave through the first week of January 2019 because

Human Resources Manager Allen was waiting on further instructions on what to do regarding the future employment of Knoll-Billingsley.

25. On November 30, 2018, Knoll-Billingsley filed her first charge of discrimination alleging race discrimination and retaliation with the EEOC, Charge No. 543-2019-00155.

26. During a January 3, 2019 meeting with Human Resources Manager Allen, Knoll-Billingsley was offered three options offered by PHS to return to work:

    a. Knoll-Billingsley could apply for a Nursing Tech II position in the Med/Surg Department at LCMC; and, if hired, even though the position was a grade lower than her current position, she would not lose any base pay; or

    b. Knoll-Billingsley could transfer to a Medical Assistant at the LCMC Clinic at the same pay grade, with no reduction in base pay; or

    c. Knoll-Billingsley could resign from PHS and she would be given an unspecified severance package for her resignation.

27. During the January 3, 2019 meeting, Knoll-Billingsley declined the three options and expressed her intent was to return to her EMT-B position as her career goal was to become a licensed and certified EMT-Paramedic.

28. On January 7, 2019, Knoll-Billingsley returned from administrative leave to her former position of EMT-B with the LCMC EMS department.

29. During the meeting on January 7, 2019, Heather McCloud blamed Knoll-Billingsley stating whatever she had done wrong recently had caused a department-wide investigation of EMS department; and further, McCloud stated she was not going to put up with

any of that kind of behavior. Heather McCloud later admitted she thought PHS had been investigating Knoll-Billingsley as the reason for Knoll-Billingsley not being at work for such a long time.

30. During this meeting of January 7, 2019, Knoll-Billingsley objected to being placed under special work guidelines in the guise of work expectations. Knoll-Billingsley further stated these new expectations were retaliation because of her past race complaint and told them she would quit if this was how she was going to be treated. Because both Human Resources Manager Allen and Supervisor Nunnally did not respond to Knoll-Billingsley's concerns about retaliation, she resigned.

31. On January 7, 2019, Knoll-Billingsley sent an email to Human Resources Manager Allen stating she resigned because she felt she had no other option due to the continued retaliation.

32. Knoll-Billingsley's resignation was a constructive discharge due to the expected continued retaliation, like she had received during the January 7, 2019 meeting, in the EMS department.

33. Ryan Whitley, Knoll-Billingsley's white EMT partner who had admitted using the term "nigger" in a conversation with her, was never placed on administrative leave by PHS during the investigation into the complaints of his racial harassment of Knoll-Billingsley and his retaliation of Knoll-Billingsley.

34. Further, Ryan Whitley, Knoll-Billingsley's white EMT partner who had admitted using "nigger" in a conversation with her was never disciplined by PHS during Knoll-Billingsley's employment with PHS.

35. Similarly situated white employees who had previously complained of harassment at Lincoln County Medical Center were not placed on administrative leave by PHS during the investigations of their complaints.

**FIRST CLAIM FOR RELIEF**
**[Discrimination Based on Race - 42 U.S.C. § 2000e-2(a)]**

36. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

37. Since at least November 2018, PHS has engaged in unlawful employment practices in New Mexico in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) because of Knoll-Billingsley's race, African-American.

38. Knoll-Billingsley, an African-American, was placed on an administrative leave that lasted for almost two months and long past the end of the investigation of her EEO complaints. The administrative leave that Knoll-Billingsley was placed on deprived her of the opportunity for greater overtime. The administrative leave also significantly delayed and adversely affected her progress to an EMT-Intermediate Paramedic position.

39. Knoll-Billingsley was put on administrative leave but similarly situated white employees who had previously complained of harassment at Lincoln County Medical Center were not.

40. PHS did not place any of Knoll-Billingsley's similarly situated white coworkers in the EMS department, who also submitted letters complaining of harassment, on administrative leave.

41. PHS did not place Knoll-Billingsley's alleged white harasser, Ryan Whitley, on administrative leave during the investigation of his admitted racial slurs and remarks.

8

42. PHS' actions in the investigation of Knoll-Billingsley and the subsequent decision of PHS to place her on administrative leave was because she was African-American.

43. The unlawful employment practices complained of above were intentional.

44. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Knoll-Billingsley.

45. Wherefore, the EEOC seeks all appropriate relief to correct the alleged unlawful employment practices on the basis of race, and to provide appropriate relief to Tabitha Knoll-Billingsley, as provided for pursuant to Tile VII and 42 U.S.C. § 1981a, as more fully set out in its Prayer for Relief below.

## SECOND CLAIM FOR RELIEF
### [Retaliation, Terms and Conditions-42 U.S.C. § 2000e-3(a)]

46. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

47. In October 2018, Knoll-Billingsley engaged in protected activity when she complained to the Human Resources department of PHS about Ryan Whitley's racial harassment as well as what she believed in good faith to be retaliation by her coworkers and supervisors in the EMS department after they had learned of her reporting the racial harassment by Whitley.

48. Knoll-Billingsley submitted her written complaint about the race harassment and retaliation she had experienced while working for PHS, including the racial incidents described in paragraph 18 above, to Allen the first week of November 2018.

49. On November 30, 2018, Knoll-Billingsley filed her first charge of discrimination alleging race discrimination and retaliation with the EEOC, Charge No. 543-2019-00155.

50. Since at least November 2018, PHS engaged in unlawful retaliatory employment practices in New Mexico in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

51. PHS subjected Knoll-Billingsley to the following materially adverse employment actions because of her protected activity; including but not limited to:

    a. PHS placed Knoll-Billingsley on indefinite administrative leave because of her complaints of discrimination to Human Resources;

    b. PHS also threatened Knoll-Billingsley with termination while she was on administrative leave because she did not return a phone call within 24 hours; and

    c. Instead of returning Knoll-Billingsley to her former EMT position upon conclusion of the investigation of her EEO complaints, PHS told Knoll-Billingsley that she should apply for a Nursing Tech position, transfer to a Medical Assistant position, or resign.

52. PHS' proposals for her to apply, transfer, or resign would have stopped Knoll-Billingsley from gaining needed experience to advance her career as an EMT, and both the Nursing Tech and Medical Assistant positions would have decreased Knoll-Billingsley's ability to earn overtime pay that she regularly received as an EMT. Each action by PHS, standing alone or aggregated, would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

53. In addition to these materially adverse employment actions listed in paragraph 51 above, PHS subjected Knoll-Billingsley to the following actions that, taken together and

particularly when combined with the actions listed above, would have dissuaded a reasonable worker from making or supporting a charge of discrimination:

   a. PHS prevented her from changing her assigned vehicle, despite PHS policy allowing her to change vehicles;

   b. PHS prevented her from changing on-call shifts in October 2018, despite allowing other employees to change their on-call shifts; PHS allowed EMTs to exchange "on call" shifts, but Supervisor Nunnally did not let Knoll-Billingsley exchange her scheduled "on call" shift with other EMTs;

   c. PHS coworkers shunned and ostracized Knoll-Billingsley, with knowledge of her supervisor and the Human Resources department, after she complained of discrimination; and

   d. PHS changed her regular work schedule for January 2019 in a way that cost her overtime she typically received on the weekends.

54. The causal connection between Knoll-Billingsley's protected activity and the materially adverse employment actions that PHS subjected her to is supported by the timing of the subsequent adverse actions taken by PHS.

55. Less than three weeks passed between Knoll-Billingsley's October 25, 2018 meeting with Allen to report racial discrimination to when PHS made its decision to placed her on administrative leave on November 15, 2018. This decision by PHS ignored its own past practices of placing alleged harassers on leave or removing them from the work place when white employees had filed EEO complaints in the past.

56. During those three weeks, between October 25, 2018 meeting with Allen and November 15th administrative leave, PHS also (a) prevented Knoll-Billingsley from changing her assigned emergency transport vehicle, to a vehicle she believed safer to drive, which was against EMS department practices; (b) refused to allow her to change out on-call shifts with other EMTs per standard EMS department practice; and (c) failed to address the fact her coworkers began ostracizing her because of her complaint.

57. PHS also threatened to terminate Knoll-Billingsley less than five weeks after her first complaint on October 25, 2018, and only days after Knoll-Billingsley engaged in protected activity at the November 29, 2018 meeting with the Human Resources department of PHS.

58. PHS then received Knoll-Billingsley's charge on December 6, 2018, and within five weeks, tried to get her to apply for a Nursing Tech position, transfer to a Medical Assistant position, or resign.

59. Once PHS returned Knoll-Billingsley to her pre-administrative leave position as an EMT-I, PHS constructively discharged her during a January 7, 2019 meeting by subjecting her to further retaliation from a coworker, and HR Manager and Supervisor Nunnally making it clear to Knoll-Billingsley that she would continue to be subject to retaliation while working in the PHS EMS department.

60. The effect of the practices complained of above has been to deprive Knoll-Billingsley of equal employment opportunities and otherwise adversely affect her status as a PHS employee because she opposed unlawful employment practices.

61. The unlawful retaliatory employment practices complained of above were intentional.

62. The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Knoll-Billingsley.

63. Wherefore, the EEOC seeks all appropriate relief to correct the alleged unlawful retaliation and provide appropriate relief to Tabitha Knoll-Billingsley, as provided for pursuant to Tile VII and 42 U.S.C. § 1981a, as more fully set out in its Prayer for Relief below.

**THIRD CLAIM FOR RELIEF**
**[Constructive Discharge - 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)]**

64. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

65. From and since March 2018, PHS discriminated against Knoll-Billingsley based on her race, African American, which culminated in her resignation from employment on January 7, 2019. By causing her to resign, PHS constructively discharged Knoll-Billingsley on January 7, 2019 in violation of 42 U.S.C. § 2000e-2(a).

66. From and since November 2018, PHS retaliated against Knoll-Billingsley for filing her claims of race discrimination based on her race, African American, which culminated in her resignation from employment on January 7, 2019. By causing her to resign, PHS constructively discharged Knoll-Billingsley on January 7, 2019 in violation of 42 U.S.C. § 2000e-3(a).

67. At the time of her constructive discharge, Knoll-Billingsley was performing her work in a satisfactory manner.

68. The discrimination and retaliation by her coworkers, supervisors and the PHS HR department had reached the point that a reasonable person in her position would have felt compelled to resign.

69. The unlawful employment practice described above was intentional.

70. The unlawful employment practice of PHS complained of herein was done with malice or with reckless indifference to Knoll-Billingsley's federally protected rights.

71. Wherefore, the EEOC seeks all appropriate relief to correct the alleged unlawful retaliation and to provide appropriate relief to Tabitha Knoll-Billingsley, as provided for pursuant to Tile VII and 42 U.S.C. § 1981a, as more fully set out in its Prayer for Relief below.

## **PRAYER FOR RELIEF**

72. Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant PHS, its officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any practice that permits the harassment or discrimination of employees because of race.

B. Grant a permanent injunction enjoining Defendant PHS, its officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any practice that permits retaliation against employees because they opposed unlawful employment practices, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII.

C. Order Defendant PHS to institute and carry out policies, practices, and programs that provide equal employment opportunities for African-Americans, as well as all employees who oppose unlawful employment practices, and individuals who participate in proceedings with the EEOC.

D. Order Defendant PHS to institute and carry out policies, practices, and programs that eradicate the effects of their past and present unlawful employment practices, including race discrimination and retaliation.

E. Order Defendant PHS to make whole Tabitha Knoll-Billingsley by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement and/or frontpay.

F. Order Defendant PHS to make whole Tabitha Knoll-Billingsley by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including job search expenses or medical expenses in amounts to be determined at trial.

G. Order Defendant PHS to make whole Tabitha Knoll-Billingsley by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses in amounts to be determined at trial.

H. Order Defendant PHS to pay Tabitha Knoll-Billingsley punitive damages for their malicious and/or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

73. The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this _25th__ day of August 2020.

Respectfully submitted by:

SHARON F. GUSTAFSON
General Counsel

ROBERT A. CANINO
Acting Deputy General Counsel

MARY JO O'NEILL
Regional Attorney

***Electronically Filed by:***

*/s/ LORETTA MEDINA*
Supervisory Trial Attorney

*/s/ Jeff A. Lee*_____
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 739-6723
Loretta.Medina@eeoc.gov
Jeff.Lee@eeoc.gov

*Attorneys for Equal Employment Opportunity Commission*